(No. 2677—

PETER BAUER, Claimant, *vs.* STATE OF ILLINOIS, Respondent.

*Opinion filed March 25, 1938.*
*Opinion on review filed June 20, 1938.*

KURT KIESOW, for claimant.

OTTO KERNER, Attorney General; GLENN TREVOR, Assistant Attorney General, for respondent.

MR. CHIEF JUSTICE HOLLERICH delivered the opinion of the court:

For more than a year prior to April 25th, 1934, claimant was in the employ of respondent as a highway maintenance patrolman on S. B. I. Route 20, Section 107, and on the last

mentioned date was working on said route southwest of Waukegan, in Lake County.

On said date claimant and a fellow-employee were heating a barrel of "cut-back," a mixture consisting largely of tar and pitch, which was used in the repairing of roads. In the process of heating, the barrel exploded and claimant was struck by portions thereof, and was burned about the spine, face, neck and arms by some of the mixture which was thrown upon him as the result of the explosion. He was rendered unconscious and remained in that condition for five days. Immediately after the accident he was taken to St. Theresa's Hospital at Waukegan, and remained there until May 8th, 1934, when he returned to his home. While at the hospital he was under the care of Dr. L. E. Bovik, who continued to treat him after he returned to his home. Claimant remained at home until about July 1st when he was asked to and did substitute for a supervisor of maintenance while the latter was away on his vacation. He continued to work as a substitute supervisor for about five weeks, and then assisted in breaking in a new supervisor, working in that capacity until September 8th, 1934. Apparently the only work he had to do as Supervisor was to ride around in an automobile and oversee the work being done, and afterwards to ride with the new supervisor until he became familiar with the new territory.

Claimant testified that his condition was such that he was unable to continue with such work after September 8th, and about that date he was notified to return to Dr. Bovik for further treatment. On September 10th, 1934 he again returned to the hospital where he remained for thirteen days. X-ray pictures were taken on July 31st, 1934, September 18th, 1934, and May 29th, 1936.

Claimant was sixty-seven years of age at the time of the accident, was married, and had no children under the age of sixteen years.

Claimant's salary was One Hundred Dollars ($100.00) per month, and he continued to receive his full salary from the date of the injury to November 1st, 1934. Thereafter, from November 1st, 1934 to May 1st, 1935 he was paid half of his regular salary, to-wit, Fifty Dollars ($50.00) per month.

After his return from the hospital on September 23d, 1934, he continued to go to the office of Dr. Bovik three times

a week for light and rubbing treatments until February 10th or 12th, 1935.

Prior to the accident claimant had worked steadily and was not troubled with pains of any kind. He now claims that he has pain almost all of the time, particularly a gnawing pain in the back of his head, in his left ear, down his left shoulder and arm to the end of his fingers. He claims that when he sits still he is quite comfortable, but if he moves around he has considerable pain. He also claims that he has but little strength and when he attempts to lift anything he has pain all the way down his arm; that he has been lame in his left leg ever since the time of the accident.

Claimant has had but little education, always worked as a laborer, and never had any previous injury, except that when he was twenty-one years of age he sustained an injury to his left knee. He claims he is now unable to do any substantial amount of work, but states that he putters around the house a little, mows the lawn, and pulls weeds in the garden sometimes, but that it tires him to do so. He also claims that he does not sleep well.

The evidence in the record on the question as to the extent of claimant's disability consists of his own testimony, the testimony of Dr. Leslie E. Bovik, the attending physician, who was called by and testified on behalf of the claimant; Dr. Julius Brams who was called by the claimant and testified with reference to the X-rays in evidence; and Dr. H. B. Thomas who was called by the respondent.

Dr. Bovik in summing up his conclusions, stated: "This man may not have a permanent total disability. He might have a permanent 90% disability, at least for a common laborer. That would be based upon the kind of common labor that this man might have to pursue. Throwing him into the field of common laborers and all things connected therewith, I would say that he was not fit for such work."

Dr. Thomas was of the opinion that the claimant had a 20% disability of the neck. He was also of the opinion that the disability of the knee resulted from the injury sustained by claimant when he was twenty-one years of age, and was not service-connected. Dr. Thomas also was of the opinion that with the exception of the aforementioned disability of the neck and the disability of the knee, claimant ought to

be able to do as much now as he did before, taking into consideration his age changes.

Dr. Brams stated: "I think he certainly would have a permanent partial disability. As to the exact percentage I can't say. It would depend upon what type of work this man would do. If he does labor that is such that he subjects himself to greater possibility of injury to the spine, his degree of disability is that much greater. Certainly he is partially disabled, regardless of what he does."

The evidence discloses that there is a narrowing of the inner space between the fourth and fifth, and between the fifth and sixth cervical vertebrae; that there is some lipping of the vertebral bodies, and an arthritic condition involving the aforementioned joints; that such condition can be caused by trauma or by infection. The several X-rays disclose that the pathology is increasing.

Dr. Thomas stated that as a result of his examination he found considerable arthritis in both the cervical vertebrae and in the joint, with some lipping, some wearing away of the cartilages. It also appears from the evidence that the claimant had an arthritic condition prior to the time of the injury here in question. It is a fair conclusion from all of the evidence that the accident in question either caused the present condition of the claimant, or it aggravated a pre-existing condition, and thereby produced the claimant's present disability.

It is well settled in this State that in either of such events, the respondent is liable under the terms and provisions of the Workmen's Compensation Act. *Big Muddy Coal Co.* vs. *Ind. Com.*, 279 Ill. 235; *Rockford Traction Co.* vs. *Ind. Com.*, 295 Ill. 358; *Ohlson* vs. *Ind. Com.*, 357 Ill. 335; Angerstein's "The Employer and the Workmen's Compensation Act," Volume 1, page 93, Section 52.

From a consideration of all of the evidence in the record, it is clear that the claimant has been seriously and permanently injured. He claims that his disability is total. The medical testimony on both sides of the case appears to be to the effect that the disability at the time of the hearing was partial rather than total, the extent of such partial disability being variously estimated by the several witnesses.

We therefore find that as the result of the accident in question, the claimant sustained a permanent partial dis-

ability. However, there is no evidence in the record upon which we can base an award for such permanent partial disability.

Section 8, paragraph D of the Workmen's Compensation Act, relative to the amount of compensation payable for a permanent partial disability, provides as follows:

"If, after the injury has been sustained, the employee as a result thereof becomes partially incapacitated from pursuing his usual and customary line of employment, he shall, except in the cases covered by the specific schedule set forth in paragraph (e) of this section, receive compensation, subject to the limitations as to time and maximum amounts fixed in paragraphs (b) and (h) of this section, equal to fifty percentum of the difference between the average amount which he earned before the accident and the average amount which he is earning or is able to earn in some suitable employment or business after the accident."

The evidence shows that claimant's annual wages prior to the accident were $1,200.00, but there is nothing to show what he has earned or is able to earn in some suitable employment after the accident.

There is evidence to show that while his superior officer was away on his vacation, claimant performed the duties of such officer and received the same compensation therefor as he earned prior to his injury. However, the only work he did was to drive around from place to place in an automobile and supervise the work done by others. Even such work was more than he was able to stand, and he had to return to the hospital for treatment. We therefore consider that such employment, constituted no criterion as to what claimant was able to earn after the accident.

In our consideration of cases under the Workmen's Compensation Act, we are required by Section 6, paragraph 6 of the Court of Claims Act to determine such cases "in accordance with the rules prescribed by the Act commonly called the Workmen's Compensation Act." The Court of Claims is so constituted that practice in this court necessarily must differ in material respects from practice before the Industrial Commission, and in matters of practice it is not possible for this court to follow in every respect the provisions of the Workmen's Compensation Act. In proceedings before the Industrial Commission, the usual practice is for the case to be heard in the first instance before the Arbitrator, and his decision is subject to review by the Industrial Commission, in accordance with the provisions of Section 19 of the Com-

pensation Act, which section authorizes the taking of additional testimony on the hearing on review. We have no authority to appoint an arbitrator, or to designate one member of the court as an arbitrator to hear the case in the first instance. Nevertheless, we feel that either party to a compensation case in this court is entitled to a hearing on review, and to offer additional testimony on such hearing, in all respects as provided by Section 19 of the Workmen's Compensation Act.

Award is therefore denied, but claimant is given the right to file a petition for review within the time and in the manner set forth in Section 19 of the Workmen's Compensation Act. The evidence heretofore taken, and now filed in this court will stand as the agreed statement of facts or transcript of the record required to be filed pursuant to the provisions of paragraph B of Section 19 of the Act.

## OPINION ON REVIEW.

MR. CHIEF JUSTICE HOLLERICH delivered the opinion of the court.

This cause again comes before the court on claimant's petition for review, pursuant to the provisions of paragraphs (b) and (e) of Section 19 of the Workmen's Compensation Act.

An opinion was filed herein on March 25th, 1938, in which the court found that as the result of the accident in question, claimant was temporarily totally disabled, and also sustained a permanent partial disability, but award was denied for the reason that payments had been made to claimant in excess of the amount due him for temporary total disability, and there was no evidence in the record from which a computation could be made of the amount to which he was entitled for permanent partial disability under the provisions of paragraph (d) of Section 8 of the Workmen's Compensation Act.

Since the filing of the petition for review, further proceedings have been had, from which it appears that claimant can now do light work, and is now able to earn the sum of $10.00 per week.

The facts with reference to the accident in question, the nature and extent of claimant's injury, and the payments heretofore made to him are fully set forth in the original opinion of the court.

From the present record it appears that all medical, surgical and hospital services were furnished by respondent; that claimant was temporarily totally disabled for the period of 43 2/7 weeks; that the average amount which claimant earned before the accident was $23.08 per week, and the average amount which he is able to earn in some suitable employment after the accident is $10.00 per week; that subsequent to the accident, respondent paid to claimant for wages and compensation the total amount of $916.66; that of such amount the sum of $214.31 was paid for productive time, and the remainder, to-wit, $702.35, must be considered as compensation, and deducted in computing the amount now due the claimant.

Claimant is therefore entitled to recover the sum of $499.52 for 43 2/7 weeks temporary total incapacity at $11.54 per week, and in addition thereto, the sum of $2,437.55 for 372 5/7 weeks permanent partial disability at $6.54 per week. From the total of such amounts, to-wit, $2,937.07, there must be deducted the sum of $702.35 for compensation heretofore paid as above set forth, leaving a net amount of $2,234.72.

The accrued compensation to June 20th, 1938, computed as above, is $1,570.21, which amount, less the sum of $702.35 heretofore paid as aforesaid, to-wit, $867.86, is payable forthwith, and the remaining balance of compensation, to-wit, $1,366.86 is payable in weekly installments of $6.54 commencing June 27th, 1938.

Award is therefore entered in favor of the claimant for the sum of $2,234.72, payable as follows, to-wit:

1) The sum of Eight Hundred Sixty-seven Dollars and Eighty-six Cents ($867.86) forthwith;

2) The sum of Thirteen Hundred Sixty-six Dollars and Eighty-six Cents ($1,366.86) in Two Hundred Nine (209) weekly installments of Six Dollars and Fifty-four Cents ($6.54) per week commencing on June 27th, 1938.

This award being subject to the provisions of an Act entitled "An Act Making an Appropriation to Pay Compensation Claims of State Employees and Providing for the Method of Payment Thereof," approved July 3d, 1937 (Session Laws 1937, p. 83), and being by the terms of such Act, subject to the approval of the Governor, is hereby, if and when approval is given, made payable from the appropriation from the Road Fund in the manner provided for in such Act.